UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RAINA KUGLER,

                    *Plaintiff*,

    - against -

PATRICK R. DONAHOE, POSTMASTER
GENERAL,
                    *Defendant*.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
11-CV-648 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

       Plaintiff Raina Kugler brings this action against Defendant Patrick Donahoe in his

official capacity as the Postmaster General of the United States Postal Service ("USPS"),

alleging unlawful retaliation based on prior Equal Employment Opportunity ("EEO") activity, in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and

analogous state and local statutes.  The Postmaster General moves for summary judgment on

Kugler's claims, arguing first, that the state- and local-law claims must be dismissed, as Title VII

provides the only remedy for claims of employment discrimination by federal employees.

Second, he contends that her Title VII retaliation claim is subject to dismissal because Kugler

cannot make out a *prima facie* case of retaliation, and, even if she could, the USPS had

legitimate, non-discriminatory reasons for reassigning and eventually terminating Kugler.

Kugler opposes the motion.  For the following reasons, the Court grants summary judgment in

favor of Donahoe on all claims and dismisses this action.

# BACKGROUND[1]

A. <u>Plaintiff's On-the-Job Injury</u>

Kugler began working for the USPS in 1989 at its Flatbush Station in Brooklyn, NY. (Def.'s Rule 56.1 Statement (Doc. No. 76) ¶ 1.)  On January 10, 1997, Kugler was working at the USPS's General Mail Facility ("GMF") in Brooklyn and was injured on the job when a co-worker pushed her and caused her to fall out of her chair.  (*Id.* ¶ 3.)  Kugler was treated in an emergency room for injuries to her right knee, right leg, and lower back.  (*Id.* ¶ 4.)  As a result of her injuries, the Department of Labor's Office of Workers' Compensation Program ("OWCP") found Kugler totally disabled and awarded her compensation benefits.  (*Id.* ¶ 6.)  This finding was temporary, however, and she was required to find suitable work within the USPS once her condition improved.  (*Id.* ¶ 7.)  After a medical examination, on September 24, 1997, a doctor determined that Kugler could return to work on a limited duty basis.  (*Id.* ¶ 8.)  The doctor restricted the types of work Kugler could perform, ordering that she engage in no activities involving the active use of the lumbar spine, no lifting in excess of ten pounds, no bending, twisting, or kneeling, and only intermittent pushing or pulling.  (*Id.* ¶ 9.)

B. <u>The Limited Duty Program</u>

The USPS has established a limited duty program that accommodates employees who are temporarily unable to perform their regular job functions.  (*Id.* ¶¶ 11-12.)  Once an employee shows medical documentation confirming that they can perform certain job functions on a limited duty basis, the USPS is required to find suitable work for them within the agency that is consistent with their prescribed physical restrictions.  (*Id.* ¶¶ 17-18.)  Once a suitable position is found for the employee, the USPS must communicate that offer in writing to the employee.  (*Id.*

---

[1] The following facts are undisputed, except where noted.

¶ 19.)  The USPS may, but is not required, to use a pre-printed form, PS Form 2499X, to communicate the offer to the employee.  (*Id*. ¶ 21.)

If the employee accepts the job offer, the USPS's Injury Compensation Handbook instructs the USPS to submit the offer and acceptance to the OWCP.  (*Id*. ¶ 24.)  If the employee rejects the offer, the USPS still submits the offer and rejection to the OWCP, which then determines whether the offer was suitable for the employee.  If the offer is found to be suitable, the OWCP may terminate or reduce the employee's compensation benefits.  (*Id*. ¶ 25.)

C.  Kugler's Limited Duty Assignments

The USPS made Kugler a limited duty offer on December 16, 1997 that was consistent with the limitations that her doctor prescribed.  (*Id*. ¶¶ 28-29.)  She accepted this offer, and began working at the Van Brunt Station.  (*Id*. ¶ 30.)  Shortly thereafter, Kugler accepted limited duty assignments at the GMF, the Wyckoff Station, and the East New York Station, where she worked until August 2003.  (*Id*. ¶¶ 31-32.)

In January 2003, the USPS identified the GMF as a location where it would reassign many employees on limited duty status.  (*Id*. ¶ 33.)  As part of this plan, the USPS reassigned Kugler to the GMF's Computer Forwarding System ("CFS") unit, where she would handle "return to sender" mail.  (*Id*. ¶¶ 37-38.)  Kugler accepted the limited duty offer in August 2003, and began working at the GMF the same month.  (*Id*. ¶ 39.)

In 2004, the USPS announced a plan for staffing changes at the GMF.  One such change was the elimination of Level 5 clerk positions, including bid job assignments in the CFS unit at that facility.  (*Id*. ¶ 40.)  The USPS's agreement with the postal workers' union mandated that limited duty employees who were not working in specific job bid assignments, like Kugler, could not continue working in a particular unit on limited duty status when employees who did hold

bid assignments in that unit were having their positions abolished. (*Id.* ¶ 43.) Thus, on July 28,

2004, the USPS sent a letter to Kugler notifying her of the plan to reduce Level 5 clerks; the

letter explained how it would impact her as a limited duty employee not holding a specific bid

assignment. (*Id.* ¶ 44-46.) The letter explained that the USPS identified Kugler "as either a

rehab or limited duty clerk not holding a specific job bid assignment." (Ex. D to Rudy Decl.

(Doc. No. 75).) The letter continued, "If it comes to pass you do not have a specific job bid

assignment, you will receive a second letter advising you to report either to the temporary RTS

Unit or on stand-by." (*Id.*)

Kugler disputes that her job was going to be impacted by the reduction of Level 5 clerks.

She points to letters she received on August 6, 2004, which identified her as an employee not

impacted by "management's intention to excess 51 junior level PS-5 Clerks from the Brooklyn

Installation." (Ex. 6 to Feder Decl. (Doc. No. 80) at 1.) Similarly, a December 9, 2005 letter

from the USPS stated that she would not be impacted by management's plan to excess 68 "junior

full time regular clerks" from the "Brooklyn installation." (*Id.* at 2.)

For limited duty employees impacted by the reduction of Level 5 clerks, the USPS

created the Return-to-Sender, or "RTS" Unit to keep those employees, including Kugler, at the

GMF until new assignments could be found for them. (Def.'s 56.1 Statement ¶ 47.) Kugler

contends that she was not "temporarily" assigned to the RTS Unit, but, rather, had a permanent

position there. She points to her badge card as evidence of her permanent position there, which

identifies her assigned unit as "219." (*See* Ex. 5 to Feder Decl.)

The USPS offered Kugler a limited duty post in the RTS Unit on September 16, 2004.

(Def.'s 56.1 Statement ¶ 50.) She accepted the position. (*Id.* ¶ 51.) On December 21, 2004, the

USPS offered Kugler a modified limited duty post, this time at the CFS Unit, which she accepted the same day.  (*Id*. at ¶ 52.)

It was not until November of 2005 that the USPS began implementing the staffing changes related to Level 5 clerks described above.  (*Id*. ¶ 53.)  The USPS charged Neil Spandorf with finding suitable employment for those limited duty employees that would be impacted by the changes.  (*Id*. ¶ 55.)  Spandorf was obligated to find employment for limited duty employees that complied with their medical restrictions and conditions.  (*Id*. ¶ 57.)  In addition to identifying Kugler as an affected employee, the USPS identified Gilbert Maldonado, John Green, and Nancy Tse, as limited duty employees that would need to be reassigned from the CFS Unit.  (*Id*. ¶ 66.)  Maldonado, Green, and Tse were all offered new limited duty assignments.  (*See id*. ¶¶ 69-73.)

D.  Events Leading to Kugler's Termination

On March 6, 2006, the USPS, through Spandorf, mailed to Kugler a new limited duty assignment at the Adelphi Station in Brooklyn.  (*Id*. ¶ 60.)  Spandorf then sent Kugler a letter on March 14, 2006 advising her that she had been continuously absent from work as of March 8, 2006 and asking when she would return to work.  (*Id*. ¶ 76.)  The letter warned that if she did not respond to the letter within seven days, she would be considered "AWOL," which could result in her being discharged from the USPS.  (*Id*. ¶ 77.)

Kugler never responded in writing to the March 14, 2006 letter.  Rather, she attempted to report to work at the GMF on March 18, 2006, but was not allowed to work there.  (*Id*. ¶ 80.)

Kugler states that she did not receive the new limited duty offer until March 22, 2006, but the parties agree that, on March 21, 2006, Spandorf advised Kugler by letter that she had been absent from work since March 8, 2006 without approved leave, and that, effective March 8,

2006, her status was changed to Absence without Authorized Leave ("AWOL"). (*Id*. ¶ 81.) In the March 21, 2006 letter, Spandorf included the March 6, 2006 limited duty offer and advised that Kugler must accept or reject the offer. (*Id*. ¶ 82.)

Kugler reported to Adelphi Station on March 22, 2006. (*Id*. ¶ 83.) She did not accept the March 6, 2006 offer immediately; rather, she requested that her doctor review it for compliance with her conditions. (*Id*. ¶ 84.) Kugler wanted to continue working at the GMF while her doctor reviewed the offer, but Spandorf did not allow her to do so because he was instructed that, when an employee refuses to sign a job offer, the employee is not allowed to return to work because she could hurt herself or others. (*Id*. ¶ 88.)

On March 27, 2006, the OWCP reviewed the March 6 limited duty offer and, in a letter to Kugler dated the same day, concluded that the offer was suitable. (*Id*. ¶ 89.) The letter stated that Kugler had thirty days to accept or to provide a reasonable, acceptable explanation for rejecting the offer. (*Id*. ¶ 90.) It also advised Kugler that, if she refused the offer without reasonable cause, her compensation benefits could be terminated. (*Id*. ¶ 91.)

On April 14, 2006, Spandorf advised Kugler by letter that she was to appear in his office on April 25, 2006 for a pre-disciplinary hearing. (*Id*. ¶ 92.) Kugler attended the meeting. (*Id*. ¶ 93.)

Meanwhile, on April 24, 2006, Kugler's doctor recommended additional restrictions on her work conditions and that she have limited travel time to work and an on-site parking spot. (*Id*. ¶¶ 94-96.) In light of these recommendations, the USPS offered Kugler a new limited duty post on May 8, 2006 as a clerk at the Atlantic Avenue Station in Brooklyn. (*Id*. ¶¶ 97-98.) The May 8, 2006 offer was consistent with her doctor's recommendations. (*Id*. ¶ 101.) The OWCP reviewed the May 8, 2006 offer, found it suitable in light of her work restrictions, and explained

to her in writing that she could accept the offer with no penalty; if she did not accept, she had thirty days to provide a reasonable, acceptable explanation for refusing the offer. (*Id*. ¶¶ 102-04.) If she refused without reasonable cause, her compensation benefits would be terminated. (*Id*. ¶ 105.)

On June 9, 2006, Kugler refused the May 8 offer because, as she believed, it would require her to constantly sit and stand continuously throughout the six-hour day and because it did not provide two consecutive days off. (*Id*. ¶¶ 106-07.) While her doctor's April 24 medical assessment did not recommend that she be given two consecutive days off (*id*. ¶ 108), an August 4, 2006 letter from the doctor recommended that she be given two consecutive days off. (Ex. 22 to Feder Decl.)

In light of Kugler's refusal of the May 8 offer, the OWCP reviewed her stated reasons and found none of them to be suitable. The OWCP advised Kugler in writing that she had fifteen days to accept the position; if she did not, her entitlements to wage loss and schedule award benefits would be terminated. (Def.'s 56.1 Statement ¶¶ 109-111.) Kugler did not accept the offer within fifteen days of the OWCP letter. (*Id*. ¶ 112.) As such, on July 11, 2006, the OWCP notified Kugler that her compensation benefits were being terminated. (*Id*. ¶ 112.)

Similarly, because Kugler did not accept the May 8 offer, Spandorf sent a letter to Kugler on July 20, 2006, stating that she had been continuously absent since March 8 and that she remained in AWOL status. (*Id*. ¶ 114.) Spandorf also wrote that Kugler was to report to the Injury Compensation Office within three days of the date of the letter to return to duty; if she did not, she should report to him on July 31, 2006. (*Id*. ¶ 115.)

It is disputed whether Kugler reported to the Injury Compensation Office, but Kugler did report to Spandorf on July 31, 2006, when she told him she would not accept the May 8 offer.

(*Id.* ¶ 118.)  Kugler alleges that at this meeting, she presented Spandorf with a note from her doctor that she be given two consecutive days off.  While the doctor's note was submitted in this motion, Kugler does not point to any deposition testimony or other evidence showing that she presented Spandorf with this note on July 31, 2006.  (*See* Ex. 25 to Feder Decl.)

On August 16, 2006, Spandorf sent a letter to Kugler, instructing her to report for a pre-disciplinary interview on September 5, 2006.  (Def.'s 56.1 Statement ¶ 119.)  If she failed to do so, the letter explained, she may be terminated.  (*Id.* ¶ 120.)  Kugler did not report for the pre-disciplinary interview on September 5 because, as she testified, she was not feeling well and was feeling harassed.  (*Id.* ¶121; Ex. 46 to Lynch Decl.)  Kugler did not contact Spandorf or anyone else to tell them that she would not be able to report to the interview.[2]  (Def.'s 56.1 Statement ¶ 121.)

E.  Kugler's Termination

In light of Kugler's AWOL status, Spandorf consulted with the USPS's labor relations office and Kugler's station manager; together, they determined that Kugler should be terminated.  (*Id.* ¶ 122.)  Specifically, Kugler consulted with Archelest Warner, the manager of customer

---

[2] Kugler quibbles with this fact, stating that Donahoe is simply drawing an inference that Kugler did not contact Spandorf or other management officials, "when no such evidence exists."  Kugler continues that she was "not asked at deposition, but will testify at trial that she did, in fact, notify the office that she would be unable to report at that time."  (Pl.'s Resp. to Def.'s 56.1 Statement ¶ 121.)  First, Kugler is incorrect that "no such evidence" shows that she did not contact the office. Rather, the notice of removal Spandorf eventually sent to Kugler states that she failed to report for the pre-disciplinary interview and that she "failed to notify management of [her] inability to report."  (Ex. 44 to Lynch Decl. at USPS-00005.)  Second, Kugler's mere representation that she would testify otherwise at trial is insufficient to create a genuine dispute of fact for purposes of a summary judgment motion.  *See* Fed. R. Civ. P. 56(c)(1)(A) (explaining that a party must cite to particular material parts of the record, including depositions, documents, affidavits, or declarations, among others, to support the party's assertion that a fact is genuinely disputed). Therefore, this fact is considered undisputed for purposes of this motion.  *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assert of fact . . . the court may . . . consider the fact undisputed for purposes of the motion.")  In any event, accepting Kugler's version would not alter the outcome of this motion.

service operations at the GMF.  (*Id.* ¶ 123.)  Warner also concluded that Kugler should be terminated in light of her continuous, unauthorized absences.  (*Id.* ¶ 124.)

Spandorf issued to Kugler a notice of removal on November 7, 2006.  (*Id.* ¶ 125.)  The notice explained the bases for terminating Kugler: continuous absence without authorized leave and failure to follow instructions.  (*Id.* ¶ 127.)  As to her absences, the notice stated that she was absent from work from March 8, 2006, refused job offers from the USPS that were deemed suitable, failed to report to work, and failed to provide any documents to substantiate her continued absences.  (*Id.* ¶ 128.)[3]  The notice explained how her absences violated various provisions of the Employee and Labor Relations Manual.  (*Id.* ¶¶ 130-35.)  As to her failure to follow instructions, the notice stated that she failed to report to the injury compensation office, failed to provide documentary support for her continued absence, and failed to report to work, all as directed by the July 20, 2006 letter; that she failed to report for the September pre-disciplinary interview; and that she failed to notify management of her inability to report for the September pre-disciplinary interview.  (*Id.* ¶ 136.)  The notice also explained how her failure to follow instructions violated provisions of the Employee and Labor Relations Manual.  (*Id.* ¶ 137.)[4]

On April 14, 2007, the USPS notified Kugler that her health benefits and insurance coverage were being terminated because she had been in leave without pay status for 365 days.

---

[3] Kugler's 56.1 Statement disputes this fact, but points to no evidence substantiating her dispute. Therefore, this fact is deemed admitted.  *See* Fed. R. Civ. P. 56(c)(1)(A) & 56(e)(2).
[4] Again, Kugler's 56.1 Statement disputes this fact, claiming that Kugler "followed instructions," but points to no evidence substantiating her dispute.  (Pl.'s Resp. to Def.'s 56.1 Statement ¶ 137.) Therefore, this fact is deemed admitted.  *See* Fed. R. Civ. P. 56(c)(1)(A) & 56(e)(2).

(*Id.* ¶ 139.)[5]  Terminating her health and insurance benefits was in accordance with the

Employee and Labor Relations Manual.  (*Id.* ¶ 140.)

   F.  <u>Kugler's EEO Activity</u>

   With respect to events in 2006, Kugler filed two EEO complaints, one on April 25, 2006

and one on June 21, 2006.  (*Id.* ¶¶ 141-42.)  In both, Kugler claimed that Spandorf discriminated

against her on account of her religion and disability, as well as in retaliation for prior EEO

activity when her assignment at the GMF was terminated, when she was directed to report to

Adelphi Station without a PS Form 2499X, and when her new job offer at the Adelphi Station

changed her work schedule to include non-consecutive days off.  (*Id.* ¶ 141.)

   Kugler stated that her prior EEO activity consisted of filing two EEO complaints, one in

1997 and one in 1998.  (*Id.* ¶¶ 143, 144, 147.)  The 1997 EEO complaint consisted of allegations

of discrimination by Kugler's then-supervisors for her complaining to them about the incident

which resulted in her on-the-job injuries.  (*Id.* ¶ 145.)  The 1997 complaint was resolved in July

2000.  (*Id.* ¶ 146.)  The 1998 complaint consisted of allegations of disability discrimination and

retaliation arising out of her move from the GMF to Wyckoff Station.  (*Id.* ¶149.)  This claim

was settled in April 1998.  (*Id.* ¶ 151.)

   During an EEO investigation of her June 2006 complaint, Kugler was asked to identify

similarly situated employees who were treated differently than her.  She could not identify any.

(*Id.* ¶ 152.)

   Kugler filed another EEO complaint, this time on January 26, 2007.  (*Id.* ¶153.)  Here,

she claimed that Spandorf retaliated against her for filing the June 2006 EEO complaint when

---

[5] Again, Kugler's 56.1 Statement disputes this fact, alleging that AWOL status was not "proper," but points to no evidence substantiating her dispute.  (Pl.'s Resp. to Def.'s 56.1 Statement ¶ 139.) Therefore, this fact is deemed admitted.  *See* Fed. R. Civ. P. 56(c)(1)(A) & 56(e)(2).

terminated her and having her health and insurance benefits terminated. (*Id.* ¶¶ 154-55.) As with the investigation of the June 2006 complaint, during the investigation of the January 2007 complaint, Kugler was asked to identify similarly situated employees who were treated differently. She could not identify any. (*Id.* ¶ 156.)

The EEOC consolidated Kugler's June 2006 and January 2007 complaints. (*Id.* ¶ 157.) On March 27, 2009, the EEOC denied Kugler's request for a hearing and remanded the case to the USPS for a final agency decision. (*Id.* ¶ 158.) The USPS issued a final agency decision on April 20, 2009 and found that Kugler was not subject to discrimination or retaliation. (*Id.* ¶ 159.) Kugler appealed, and the EEOC affirmed. (*Id.* ¶ 160.) The EEOC also denied her motion for reconsideration. (*Id.* ¶ 161.)

G. Workers Compensation Grievance

Kugler requested a hearing to challenge the OWCP's July 11, 2006 decision to terminate her compensation benefits. (*Id.* ¶ 162.) The OWCP held a hearing, and on March 12, 2007, the OWCP found that its termination of compensation benefits was proper on the grounds that Kugler refused an offer of suitable work. (*Id.* ¶ 163.) The OWCP denied her request for reconsideration. (*Id.* ¶ 164.) On August 25, 2009, the Department of Labor's employee compensation appeals board affirmed the OWCP's decision. (*Id.* ¶ 165.)

H. Union Grievance

Similarly, Kugler challenged her termination by having her union file a grievance on her behalf. (*Id.* ¶ 166.) The parties agreed to arbitration. (*Id.*) The arbitrator held a hearing on January 24, 2008 on whether the notice of removal was issued for just cause. (*Id.* ¶ 167.) On February 29, 2008, the arbitrator issued an award, finding that the USPS had just cause for terminating Kugler. (*Id.* ¶ 169.) The arbitrator found that Kugler had been out of work for a

considerable amount of time without approval and that she refused to cooperate with management's request for documentation.  (*Id.* ¶ 170.)

I.  This Action

Kugler commenced this action on February 9, 2011.  In her complaint, she alleged disability discrimination in violation of Title VII,[6] the New York State Human Rights Law ("NYHRL"), and the New York City Human Rights Law, ("NYCHRL").  (Compl. (Doc. No. 1) ¶¶ 42-56.)  Kugler also alleged retaliation in violation of Title VII, the NYSHRL, and the NYCHRL, claiming that Spandorf and the USPS retaliated against her for filing EEO complaints when reassigning her from the GMF and when terminating her.  (Compl. ¶¶ 57-71.)

Kugler withdrew with prejudice her disability discrimination claims on December 28, 2012, leaving only her retaliation claims arising under federal, state, and local law.  (Stip. & Order of Partial Dismissal with Prejudice (Doc. No. 65).)  This motion followed.

**DISCUSSION**

A.  The Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material facts exists "if the

---

[6] Kugler stated her disability discrimination claim as arising under Title VII, but the parties agree that, as a federal employee, her claim actually would arise under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*.  (Def.'s 56.1 Statement ¶ 174.)  *See Garvin v. Potter*, 367 F. Supp. 2d 548, 560 (S.D.N.Y. 2005) (noting that the Rehabilitation Act is the sole remedy for claims of disability discrimination by a federal employee); *Murphy v. Bd. of Ed. of Rochester City School Dist.*, 273 F. Supp. 2d 292, 314 (W.D.N.Y. 2003) (explaining that claims of disability discrimination do not arise under Title VII).

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or reasonable inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with specific facts showing there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted, emphasis in original). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247-48).

B.  Retaliation Claims under the NYHRL and NYCHRL

Donahoe argues that Kugler's retaliation claims arising under the NYHRL and NYCHRL must be dismissed because they are preempted by Title VII as the exclusive remedy for claims of

discrimination by federal employees in their federal employment. Kugler does not respond to this argument. The Court agrees with Donahoe.

In *Brown v. General Services Administration*, 425 U.S. 820, 835 (1976), the Supreme Court held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment" based on race, color, religion, sex, or national origin. "To allow [a] plaintiff to go forward with his claims under state law and New York City law would be inconsistent with the holding in *Brown*" because it "would render meaningless the 'rigorous administrative exhaustion requirements and time limitations' of Title VII and would eliminate the 'crucial administrative role that each agency . . . was given by Congress in the eradication of employment discrimination.'" *Garvin v. Potter*, 367 F. Supp. 2d 548, 559-60 (S.D.N.Y. 2005) (quoting *Brown*, 425 U.S. at 833); *see also Shaw v. U.S. Postal Serv.*, No. 09-CV-6617, 2010 WL 3749233, at *12 (S.D.N.Y. Aug. 16, 2010) *report and recommendation adopted*, No. 09-CV-6617, 2010 WL 3767115 (S.D.N.Y. Sept. 27, 2010) (noting that Title VII provides the exclusive remedy for claims of discrimination in federal employment).

The Second Circuit has extended the holding of *Brown* to disability discrimination claims arising under the Rehabilitation Act in part because such claims are actually remedied via § 717 of Title VII. *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998). Similarly, district courts apply the holdings of *Brown* and *Rivera* not only to discrimination claims, but also retaliation claims arising under Title VII and the Rehabilitation Act. *See, e.g.*, *Garvin*, 367 F. Supp. 2d at 559-60 (holding that *Brown* applies equally to disability discrimination claims arising under the Rehabilitation Act and to retaliation claims under Title VII and the Rehabilitation Act); *Shaw*, 2010 WL 3749233, at *13 (dismissing discrimination and retaliation claims under state law in light of *Brown*).

14

Thus, Kugler's retaliation claims arising under the NYHRL and the NYCHRL must be dismissed because Title VII is the exclusive means to remedy any valid claim of retaliation that she may have.

C. Title VII Retaliation

Donahoe further argues that Kugler's federal retaliation claim must be dismissed because she has failed to establish a *prima facie* case of retaliation. He contends specifically that she cannot show the necessary causal connection between the protected activity – the filing of EEO complaints – and the adverse employment actions – her reassignment from the GMF and her ultimate termination. Even if the Court were to find Kugler established a *prima facie* case, Donahoe submits that the USPS had legitimate, non-discriminatory reasons for terminating Kugler, and Kugler cannot show that such reasons were pretextual. Kugler argues the opposite on all points. The Court agrees with Donahoe.

1. *Retaliation Framework*

Under Title VII, it is unlawful for employers to discriminate against an employee because the employee "'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Butler v. Potter*, No. 06-CV-3828, 2009 WL 804722 (E.D.N.Y. Mar. 26, 2009) (quoting 42 U.S.C. § 2000e–3(a)).

The Court evaluates a Title VII retaliation claim under the familiar three-step, burden-shifting framework used for employment discrimination claims, as established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must establish a *prima facie* case of retaliation by demonstrating that "'(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment

action.'" *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence &*
*Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). "Causation may be proved by showing that the
retaliatory action was close in time to the protected activities; that other similarly situated
employees were treated differently; or by offering direct proof of retaliatory animus." *Allen v.*
*St. Cabrini Nursing Home, Inc.*, 198 F. Supp. 2d 442, 450 (S.D.N.Y. 2002) (citing *Clarke v. City*
*of New York*, No. 98-CV-3715, 2011 WL 876926 (S.D.N.Y. Aug. 1, 2001).

If a plaintiff satisfies this showing, the burden then shifts to the defendant to articulate a
legitimate, non-discriminatory reason for the employment action. If the defendant meets that
burden, the burden then shifts back to the plaintiff to demonstrate by competent evidence that the
reasons proffered by the defendant were pretext for retaliatory animus based upon the protected
activity. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citations omitted).

2. *The Prima Facie Case*

Donahoe contends that Kugler fails to establish a *prima facie* case of retaliation because
she cannot show a causal connection between her protected activities – the filing of EEO
complaints in 1997, 1998 and 2006 – and the alleged acts of retaliation. The Court agrees.[7]

a. Temporal Proximity

First, the alleged retaliatory actions are too remote in time from Kugler's EEO
complaints. Case law within the Second Circuit "uniformly hold[s] that the temporal proximity"
between the protected activity and adverse employment action "must be very close." *Ruhling v.*
*Tribune Co.*, No. 04-CV-2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (internal
quotation marks and citations omitted). "A substantial time lag between the protected activity
and the adverse employment action suffices to defeat an inference of retaliatory animus." *Allen*,

---

[7] Because Kugler does not offer or argue any direct proof of retaliatory animus, the Court does
not consider that issue here.

198 F. Supp. 2d at 450. Thus, courts within the Second Circuit have routinely held that a "passage of two months between the protected activity and the adverse employment action" defeats any inference of a causal relationship between the two activities. *Ruhling*, 2007 WL 28283, at *23 (citing *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y. 2003); *Hussein v. Hotel Emp. & Rest. Union, Local 6*, 108 F. Supp. 2d 360, 367 (S.D.N.Y. 2000); *Ponticelli v. Zurich Am. Ins. Grp.*, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998)); *see also Allen*, 198 F. Supp. 2d at 450 ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected activity and the alleged act of retaliation.") (citing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84-85 (2d Cir. 1990); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999); *Ponticelli v. Zurich American Ins. Group*, 16 F. Supp. 2d 414, 435 (S.D.N.Y. 1998); *Zenni v. Hard Rock Cafe Int'l Inc.*, 903 F. Supp. 644, 656 (S.D.N.Y. 1995)).

Applying this rule, it is eminently clear that the 1997 and 1998 EEO complaints are far too remote in time to the adverse employment actions of which Kugler complains, necessarily defeating any causal connection between the two. Over eight years passed between the EEO complaints and the adverse employment actions, well beyond the two-month benchmark courts within this Circuit apply. Kugler's reliance on *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166 (2d Cir. 2005) in arguing that the earlier EEO complaints may be looked to in showing a causal connection as "relevant background evidence" is misplaced. In *Jute*, the court looked to earlier protected activity, which was followed closely in time by an earlier alleged retaliatory act, as relevant background evidence in satisfying the causal connection requirement. In contrast, here, Kugler points to no alleged retaliatory actions taken by the USPS following her 1997 and 1998 EEO complaints. *Jute* is distinguishable, and as such, the 1997 and 1998 EEO complaints do not suffice to show a causal connection.

The June 2006 EEO complaint, followed more closely by Kugler's termination in November of the same year, is likewise too far removed temporally from the termination. Four months passed between the June 2006 EEO complaint and her termination in November of the same year, and ten months passed between that complaint and the termination of benefits in April 2007. This passage of time is insufficient to show that the adverse employment action was causally connected to her EEO activity. *See Lambert v. N.Y. State Office of Mental Health*, No. 97-CV-1347, 2000 WL 574193, at *13 (E.D.N.Y. Apr. 24, 2000) (finding no causal connection between protected activity and adverse employment action when four months passed between the two and noting that "the adverse employment actions did not therefore follow closely on the heels of the protected activity"); *De La Cruz v. City of N.Y.*, 783 F. Supp. 2d 622, 647 (S.D.N.Y. 2011) (finding no causal connection when six months lapsed between the protected activity and adverse employment action); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 457 (S.D.N.Y. 2012) (dismissing retaliation claim for lack of causal connection where three to six months lapsed between protected activity and adverse employment action). Thus, Kugler has failed to show a causal connection by relying on temporal proximity between her EEO activity and her reassignment and ultimate termination.

b. Similarly Situated Employees

Second, Kugler has failed to establish a causal connection by demonstrating that similarly situated employees were treated differently. "To be 'similarly situated,' the individuals with whom [the plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). What constitutes "all material respects" depends on the facts and circumstances of each case, "but must be judged based on (1) whether the plaintiff and those [s]he maintains were similarly situated

were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). "In other words, there should be an 'objectively identifiable basis for comparability.'" *Id.* (quoting *Cherry v. American Tel. & Tel. Co.*, 47 F.3d 225, 229 (7th Cir. 1995)). The employees' situations need not be identical, but must closely resemble each other. *Id.* (citing *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)); *see also Redd v. N.Y. State Div. of Parole*, --- F. Supp. 2d ----, 2012 WL 7148220 (Dec. 20, 2012) (applying the standard enunciated above to a Title VII retaliation claim).

Kugler contends that many limited duty employees were permitted to remain posted at the GMF after the Level 5 clerk positions were abolished, but was never able to identify or name any such employees. As such, the Court will not consider this unsupported allegation here. She also argues that she is similarly situated to one Postal Service employee that Donahoe identified, Nancy Tse. Like Kugler, Tse was a limited duty employee in the CFS Unit at the GMF. (Def.'s 56.1 Statement ¶ 72.) In April 2006, Tse was reassigned to the Flatbush Station. (*Id.* ¶ 73.) Kugler submits that Tse, like Kugler, refused to accept a limited duty offer in June 2006. (Pl.'s Resp. to Def.'s 56.1 Statement ¶ 74.) Kugler also alleges that Tse, unlike Kugler, did not receive a pre-disciplinary letter when refusing to accept a new limited duty assignment. Like Kugler, Tse stopped reporting to work. But unlike Kugler, Tse was not sent disciplinary letters or notices of absences as quickly or as often as Kugler. Kugler also contends that Tse was never terminated. (*See* Pl.'s Opp'n to Mot. for Summ. J. (Doc. No. 83) at 13; Pl.'s 56.1 Statement (Doc. No. 79) at 2.)

In support of these allegations, Kugler submitted a variety of paperwork pertaining to a Postal Service employee named "Nancy Tom": a limited duty job offer dated June 1, 2006 (Ex.

13 to Feder Decl.); letters dated August 25, 2006, September 21, 2006, February 15, 2007, February 28, 2007, March 25, 2007, and April 13, 2007 from the Postal Service to Ms. Tom explaining that she has been absent without leave since August 2006 and instructing her to either report for pre-disciplinary interviews or provide documentation to support her absence; and a notice of removal dated May 29, 2007. (*See* Ex. 35 to Feder Decl.)

First, nothing in these documents shows that Nancy Tse is also known as Nancy Tom, as Kugler represents.[8]  Assuming, however, that Nancy Tse is also known as Nancy Tom, nothing in these documents actually shows that Kugler and Tse were treated differently in any material way.  No evidence supports Kugler's assertion that Tse was *not* ultimately terminated.  Like Kugler, Tse was issued a notice of removal for being AWOL and not following directions. Moreover, it appears that Tse was issued pre-disciplinary letters and absent notification letters, just as Kugler was.  That these letters were not issued at the same time or same pace is not sufficient to show that Tse was treated differently than Kugler; if anything this evidence shows that Tse and Kugler were treated similarly, and their treatment need not be identical.  *See Graham*, 230 F.3d at 40.  Thus, Kugler's allegations that Tse, even if similarly situated, was treated differently are either unsubstantiated or directly contradicted by the evidence she does submit.  Kugler cannot show a causal connection between her protected activity and adverse employment actions by comparison to Tse.  *See D'Agostino v. LA Fitness Int'l, LLC*, --- F. Supp. 2d ----, 2012 WL 4739084 (E.D.N.Y. Sept. 28, 2012) (rejecting retaliation claim where plaintiff "offered little more than speculation and vague allegations of similarly-situated employees

_____

[8] Donahoe, however, does not seem to dispute that Nancy Tse is also known as Nancy Tom, as he addresses the similarity between Tse and Kugler on the merits in his reply brief, but does not argue that Tom and Tse are not the same person. (*See* Def.'s Reply Br. (Doc. No. 81) at 11-14.)

receiving more favorable treatment, many of which are controverted by Plaintiff's own testimony").

       c.   The Arbitration Decision

Further undermining Kugler's attempt to make out a *prima facie* case of retaliation is the fact that a neutral arbitrator rejected Kugler's claim that her termination was discriminatory.  In *Collins v. New York City Transit Authority*, 305 F.3d 113, 115 (2d Cir. 2002), the Second Circuit held that where "an employee's ultimate termination depends upon, and is allowed by, a decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing, the arbitration decision has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive."  Here, a neutral arbitrator conducting his own independent inquiry determined that Kugler's termination was supported by just cause. The arbitrator determined that the USPS had cause to terminate Kugler because she was out of work "for a considerable amount of time without approval" and because she "thumbed her nose" at management in refusing to cooperate with requests for documentation.  (Def.'s 56.1 Statement ¶ 170.)

Kugler alleges that the arbitrator told her the incorrect date for appealing his decision, and as such her appeal was denied as untimely.  That allegation is unsupported by any admissible evidence.  Nevertheless, she asks the Court to speculate that, had the arbitrator told her the correct date, "the posture of this case would be quite different."  (Pl.'s Opp'n to Mot. for Summ. J. at 14.)  Because her allegations are unsupported, and because the Court will not accept her invitation to speculate on the outcome of the arbitration case, the Court finds that the arbitrator's decision is "highly probative of the absence of discriminatory intent in that termination." *Collins*, 305 F.3d at 119.

Accordingly, Kugler has failed to make a *prima facie* showing of retaliation because none of her proffered evidence is sufficient to show a causal connection between her protected activity – filing EEO complaints – and her reassignment from the GMF and ultimate termination.

3. *Non-discriminatory Reasons and Pretext*

Even assuming Kugler has made out a *prima facie* case, the Postmaster General has offered abundant proof of legitimate, non-discriminatory reasons for her move from the GMF and ultimate termination. The undisputed evidence shows that Kugler's initial move from the GMF was due to the abolishment of Level 5 clerk positions and the agreement that the USPS had with the postal workers' union regarding limited duty employees when permanent positions were abolished. Kugler's ultimate termination is also supported by legitimate, non-discriminatory reasons: she was AWOL and failed to follow instructions. Donahoe thus satisfies his burden of production, which is not a "demanding one," in showing a non-discriminatory reason for Kugler's reassignment and termination. *Del Franco v. N.Y.C. Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 538 (E.D.N.Y. 2006) (internal quotation marks and citations omitted); *see also id.* at 539 (noting that a "defendant successfully rebuts the presumption of discrimination by offering evidence from which a reasonable jury can conclude that plaintiff was terminated for the non-discriminatory reason").

The burden thus shifts back to Kugler to show that Donahoe's proffered reasons were pretextual, and that retaliation for her filing of EEO complaints was a "motivating factor for terminating plaintiff's employment." *Id.* at 539. "'[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason' for the employer's decision." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). "The Court must examine 'the entire record to determine whether the

plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Del Franco*, 429 F. Supp. 2d at 539 (quoting *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000).

Kugler has failed to offer sufficient evidence that the USPS's reasons for terminating Kugler were pretextual. She offers no evidence that the reasons for her termination were false, nor does she put forth admissible evidence that could persuade a jury that the USPS intentionally retaliated against Kugler. She counters, for example, evidence showing that her move from the GMF was due to the reduction of Level 5 clerk positions with two letters, one dated August 6, 2004, which identified her as an employee not impacted by "management's intention to excess 51 junior level PS-5 Clerks from the Brooklyn Installation." (Ex. 6 to Feder Decl. at 1.) The other letter, dated December 9, 2005, stated that she would not be impacted by management's plan to excess 68 "junior full time regular clerks" from the "Brooklyn installation." (*Id*. at 2.) But these letters do not contradict the evidence demonstrating the USPS's plan to abolish Level 5 clerk positions at the GMF and the fact that Kugler, as a limited duty employee, would be affected by that plan.[9] Instead, these letters show that Kugler would not be affected by a different workforce plan relating to "junior clerks."

Kugler also attempts to demonstrate pretext by arguing that Spandorf kept her on AWOL status beginning in March 2006, but she was really not properly considered AWOL until July 2006. She alleges that he "manipulated the records." (*See* Pl.'s Opp'n to Mot. for Summ. J. at 17.) She points to no evidence demonstrating that she was actually on approved leave from

---

[9] Similarly, Kugler's reliance on her badge as evidence that she had a permanent, not temporary, position at the GMF is inappropriate. Nothing on the badge indicates in what unit she was assigned, what the nature of her assignment was, or whether the assignment was temporary or permanent. It simply contains a variety of numbers, with no explanation as to those numbers' meanings. (*See* Ex. 5 to Feder Decl.)

March to July 2006, or that Spandorf manipulated the records, and, even if she did, it would not contradict the fact that she was AWOL from July to November 2006, when she was ultimately terminated.

In sum, Kugler has failed to make a *prima facie* showing of retaliation because no evidence she proffers demonstrates a causal connection between her prior EEO activity and the adverse employment actions. Even if she had made this showing, the USPS had legitimate, non-discriminatory reasons for her termination, and Kugler has failed to show that those reasons were pretextual.

## CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Donahoe on all of Kugler's claims and dismissed this action in its entirety. The Clerk of the Court is directed to enter judgment accordingly, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
     March 17, 2014

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge